WHALEN v. STUART et al.

(Supreme Court, Appellate Division, First Department. January 17, 1908.)

1. VENDOR AND PURCHASER—MARKETABLE TITLE—CLOUD ON TITLE—LIS PENDENS.

The pendency of an action for partition against vendors under contract to convey real estate, commenced by service of summons on them, in which a lis pendens was filed with a verified complaint, averring that the deed and will of a former owner through which the vendors derived title were induced by fraud and undue influence, is a cloud on the title of the vendors, continuing until the time has expired within which an appeal may be taken from a judgment dismissing the action or until a second action begun before the expiration of that time has been disposed of, and the purchaser is not bound to accept title from them at his peril or to seek out the evidence of the validity or invalidity of the title.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 48, Vendor and Purchaser, §§ 245, 246.]

2. LIS PENDENS—CANCELLATION—APPEALABLE ORDERS.

An order to vacate an order to compel the acceptance of a complaint in a suit for partition by an alleged heir of a decedent, on the ground that a deed and will of decedent, under which defendants claimed, were pro-

cured by fraud and undue influence, and dismissing the action, is appealable, and under Code Civ. Proc. § 1674, the lis pendens filed in the action cannot be canceled until the time to appeal has expired.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 33, Lis Pendens, § 33.]

**3. VENDOR AND PURCHASER—TITLE OF VENDOR—WAIVER OF OBJECTIONS.**

Executors contracted to convey real estate of the testator to a purchaser. The heirs and devisees contracted to sell other real estate to the purchaser. Before delivery of the deed in accordance with the first contract, a third person sued the executors in partition, and filed a lis pendens and a verified complaint, averring that the deed and will under which testator claimed were procured by fraud and undue influence. After a decision dismissing the action, but before entry of judgment of dismissal, the executors tendered a deed, which was refused, the purchaser claiming that the two contracts were interdependent. *Held*, that the purchaser did not waive the defect in the title resulting from the action for partition.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 48, Vendor and Purchaser, § 269.]

**4. ELECTION OF REMEDIES—INCONSISTENT POSITIONS.**

A purchaser who is defeated in an action for the reformation of a contract of purchase and for damages for the vendors' inability to perform the contract as reformed, without prejudice to an action for specific performance or damages, is not precluded from demanding specific performance of the contract, especially where the vendors alleged their willingness to complete the contract, and averred that it was the purchaser who had defaulted.

**5. SPECIFIC PERFORMANCE—TITLE OF VENDOR—REMOVAL OF OBJECTIONS—JUDGMENT AS OF TIME OF TRIAL.**

Executors contracted to convey real estate to a purchaser. Before the time for the delivery of the deed, a third person brought an action for the partition of the real estate, and filed a lis pendens and a verified complaint, averring that the deed and will under which the testator claimed title were procured by fraud and undue influence. The action was dismissed, but before the expiration of the time for an appeal the third person brought a second action on the same grounds, which resulted in final judgment on the merits against him. Thereafter the purchaser sued the executors for specific performance. *Held* that as equity renders judgment according to the situation at the time of the trial, specific performance should be decreed, it not appearing that any change had occurred in the property or the situation of the parties which would render the same inequitable.

Appeal from Special Term.

Action by John Whalen against Inglis Stuart and another, as executors of William F. Buckley, deceased. From a judgment for plaintiff, defendants appeal. Affirmed.

Argued before PATTERSON, P. J., and INGRAHAM, LAUGHLIN, CLARKE, and SCOTT, JJ.

W. P. Prentice, for appellants.
Benjamin N. Cardozo, for respondent.

SCOTT, J. The defendants appeal from a judgment decreeing that they specifically perform a contract for the sale of real estate. The record presents apparently two decisions both signed by the trial justice, but, on closer examination, it will be found that there is really only one. Both parties submitted proposed decisions embracing findings of fact and conclusions of law. The justice, evidently with considerable care, allowed some of the findings and conclusions as presented by

each party, modified others, and allowed them in the modified form, and disallowed others, marking in the margin his disposition of each request. A fair copy was then made embracing all the conclusions and findings allowed by the Justice, and this he signed, evidently intending this to be his decision, and this we accept and treat as the decision upon which the judgment rests. It is true that the justice, doubtless inadvertently, appended his name to the proposed findings and conclusions submitted by the plaintiff, but there is no reason to suppose that he intended this paper to stand as his formal decision.

The plaintiff sues as assignee of one Nellie Duke, who on March 25, 1903, entered into a contract for the purchase from the defendants, executors of William F. Buckley, deceased, of a certain plot of land on Amsterdam avenue, in the city of New York. It is this contract which is involved in the present action. On the same day Nellie Duke made another contract with the heirs and devisees of Mr. Buckley for the purchase of two lots, one on the Boulevard and one on West 157th street. Title was taken to the lots on 175th street some time in 1903, and they do not enter into the history of this litigation, which concerns only the Amsterdam avenue properties. By the terms of the contract, the deed was to be delivered on July 1, 1903, but a number of adjournments were had by consent, and somewhere about October 3, 1903, an indefinite adjournment was taken, owing to the pendency of an action which had been begun attacking Mr. Buckley's title to the property. William F. Buckley had acquired title to the property through a quitclaim deed executed by one Sarah Harris, and confirmed by her will. In May, 1903, William Williams, claiming to be a nephew of Sarah Harris, but who had not been cited upon the probate of her will, commenced an action for partition involving the Amsterdam avenue property. He served a summons on defendants, but did not serve a complaint. He filed a lis pendens, however, and a verified complaint, from which it appeared that he claimed that the deed from Sarah Harris to William F. Buckley, and her will in his favor had been induced by fraud and undue influence, and were void. In the opinion of the title company, who were examining the title for the purchaser, the pendency of this suit constituted such a cloud upon defendants' title that they could not convey a marketable title. This view seems to have been acquiesced in at the time by the defendants' attorneys, or at least not seriously combated. It is now insisted, however, that this objection to the title was even at that time untenable. There can be no doubt, as we consider, that the pendency of the Williams action rendered the title unmarketable, and justified the purchaser in refusing to complete the purchase until the cloud had been removed. The lis pendens alone would not have been sufficient, but the lis pendens and the complaint on file indicating the nature of the action did constitute a cloud, and the purchaser was neither bound to accept the title at her peril nor to seek out the evidence as to the validity or invalidity of the title. Simon v. Vanderveer, 155 N. Y. 377, 49 N. E. 1043, 63 Am. St. Rep. 683. The defendants appeared in the Williams action, and demanded service of a copy of the complaint, but their demand was not complied with, and on their motion an order was made by Mr. Justice Davis on August 25, 1903, directing that the complaint should be dismissed, unless within five days a proper

complaint should be served. Williams did not serve a complaint within the time allowed, but on August 31, 1903, obtained from· Mr. Justice Amend an ex parte order extending by 20 days his time to serve his complaint. On September 8, 1903, Williams undertook to serve a complaint upon defendants' attorneys which they refused to receive, and returned with their objection. Williams thereupon moved that defendants' attorneys be compelled to receive the complaint. This motion came on to be heard before Mr. Justice Bischoff, who expressed the opinion that, while the ex parte order of Mr. Justice Amend was irregular, it was not void, and, until vacated, justified Williams in claiming that he was not in default. He, therefore, granted the motion to compel the defendants to accept the complaint, unless within two days they moved to vacate Mr. Justice Amend's order. The defendants accordingly moved to vacate that order and for a dismissal of the complaint. This motion came on to be heard before Mr. Justice Barrett, and on October 7th his decision was published in the Law Journal granting the motion. The order upon this decision was not entered until October 12, 1903; the judgment of dismissal being entered on October 17th. As soon as the notice of Judge Barrett's decision was published, and on October 7, 1903, an engagement was made between the attorneys representing the purchaser and the defendants· for a meeting on the following day. It is found as a matter of fact (at defendants' request) "that the appointment to close the contract of sale of the property the subject of this action was to determine the relations of the parties and make tenders to fix their respective decisions, claims, and demands," and this seems to accord with the evidence, because it is apparent that it was not anticipated that the title would actually pass on that day. On October 7th the attorney representing the purchaser had distinctly notified the defendants' attorneys that the purchaser would not be prepared to accept a deed on the following day. The reason given was that the purchaser claimed that the two contracts executed on the same day constituted in fact and intent one transaction, the sale being "all or none," although embodied in two contracts; that the title to the Boulevard property still remained unmarketable, and therefore the entire contract could not be carried out. The purchaser demanded the rescission of the entire transaction, a return of the amounts paid on the contracts, and, upon the transfer of the 12 lots that had already been conveyed, the purchaser reconveying them. The ground of objection to the title to the Boulevard lots seems to be that they also came through the deed and will of Sarah Harris, and, although not included in the lis pendens and complaint filed by Williams, yet that lis pendens and complaint conveyed notice that the deed and will were claimed to be void. The defendants' attorneys promptly denied that the two contracts were interdependent, and announced that they would be prepared to renew the tender of a deed for the Amsterdam avenue property on the following day. On October 8, 1903, the parties met. The defendants tendered a deed of the Amsterdam avenue property, which the purchaser declined to accept, and renewed the demand conveyed in their letter of the preceding day that all the contracts be rescinded, the money paid be returned, both parties put where they originally stood. To this defendants declined to accede, and claimed the right to retain, by way of pen-

alty, the money which had been paid by the purchaser on account of the Amsterdam avenue property.   The controversy turns in large measure upon this, the last meeting between the parties.   It is clear that the defendants' title to the Amsterdam avenue property was still clouded and unmarketable, and that they could not then tender a title which the purchaser was bound to accept.   Judge Barrett's decision did not get rid of the Williams' suit, nor remove the cloud which that action had created.   Only a judgment of dismissal could do that, and no such judgment had been entered on October 8th.

The defendant insists, on what ground we do not understand, that the order and judgment entered on Judge Barrett's decision were not appealable.   Very clearly they were appealable and under the provisions of section 1674 of the Code of Civil Procedure the lis pendens could not have been canceled until the time to appeal had expired, and any conveyancer would have been well justified in declining to take title until that time.   There is nothing to indicate that the purchaser waived the defect, and the mere fact that it was not insisted upon, in addition to the other objections that were made, is not equivalent to a waiver, because it was not an objection that could at the time have been obviated if insisted upon.   Higgins v. Eagleton, 155 N. Y. 466, 50 N. E. 287.   That the defendants were unable to convey a marketable title to the Amsterdam avenue lots on October 8, 1903, when they tendered a deed therefor, is undisputable.   It is now claimed by defendants that the purchaser at that time consented to a rescission of the contract, but this contention finds no support in the evidence.   What she offered was to rescind all the contracts, not the Amsterdam avenue contract alone, and the defendants refused to accede to any rescission, standing upon the contract and insisting that the purchaser was in default.   Under such circumstances, they cannot now fall back upon the claim of a rescission.   Among the conclusions of law found by the trial justice was one (proposed by defendants) which has occasioned such discussion, and upon which the defendants much rely.   It is that:

"The contract, the subject of this action, was terminated by the parties thereto October 8, 1903."

The word, "terminated," as used in this sentence, is ambiguous.   If it means, as claimed by defendant, that the contract then ceased to exist so that neither party could thereafter claim anything under it, it is without support in the evidence or in the findings of fact.   We do not find it necessary, however, to attribute to it any such meaning.   What the learned justice undoubtedly meant, as was the fact, is that on October 8th the rights of the parties under the contract became determined, and that, as to whichever party was in default, the rights of the other had become fixed.   As has been said, it was the defendants who were then in default and unable to fulfill their contract.   On November 16, 1903, within the time an appeal might have been taken from the judgment dismissing his complaint in the first action, and consequently before the lis pendens in that action could have been canceled, Williams commenced a second action by filing a lis pendens and complaint similar to the one in the first action.   On January 29, 1904, he filed an amended lis pendens and complaint.   This action went to trial, and on

April 14, 1904, resulted in a judgment for defendants which was affirmed by the Appellate Division on January 20, 1905, and by the Court of Appeals on January 16, 1907; the lis pendens and the amended lis pendens having been canceled on June 27, 1905. Of course, the pendency of this action constituted another cloud on defendants' title, so that the title remained continuously unmarketable from the date of the commencement of the first action until June 27, 1905, the date on which the lis pendens in the second action was canceled. In the meantime the purchaser, persisting in the position which she had taken on October 8th, began an action on November 27, 1903, asking that the contract for the Amsterdam avenue property be reformed by inserting a clause to the effect that it was conditioned upon the fulfillment of the contract for the Boulevard and 157th street properties; alleging that the defendants were unable to give a marketable title to the Boulevard lots, and asking judgment for the return of her deposit on the Amsterdam avenue property, with her damages. This action came on for trial, and the complaint was dismissed on the merits in so far as it was asked for a reformation of the contract, and, as to the demand for a return of the deposit with damages, it was dismissed without prejudice to an action at law for their recovery. This judgment was affirmed in this court with the modification that it should not be a bar to an action by the purchaser either for the specific performance of the contract or for the recovery at law for the amount paid by her upon the contract together with the costs of examining the title. Thereupon this action was begun. It is argued in behalf of defendants that either at the meeting of October 8, 1903, or by the institution of the action for the reformation of the contract, the purchaser elected to disaffirm the contract, and has therefore waived the right to insist upon specific performance. We do not so understand. It is true that the purchaser sought a reformation of the contract, and because it could not be performed, if reformed, asked that she be awarded damages for the defendants' inability to perform. This, however, does not amount to an election of an inconsistent position (Koke v. Balken, 15 App. Div. 415, 44 N. Y. Supp. 426), and the defendants never acquiesced in the rescission of the contract upon the terms proposed by the purchaser, and even in their answer in the present action do not assert a rescission of the contract, but affirm it, and stand upon it, alleging that they at all times have been ready and willing to complete, and that it is the plaintiff or his assignor who has defaulted. Although the defendants' title remained unmarketable until June 27, 1905, the cloud upon it has been removed and it has now become marketable. Since equity renders judgment according to the situation at the time of the trial, a decree for specific performance may now be made (Haffey v. Lynch, 143 N. Y. 248, 38 N. E. 298; Rosenberg v. Haggerty, 189 N. Y. 481, 82 N. E. 503). It does not appear that there has occurred any change in the property or the situation of the parties which would render such a decree inequitable. The defendants lay much stress upon a provision in the contract that, if the title should be rejected by two title companies as unmarketable, the deposit paid on signing of the contract shall be refunded, with counsel fees, not exceeding $250, paid, and the contract be avoided. The applicability of this provision to the

facts disclosed by the evidence is not apparent, as there is no proof of rejection of the title by both of the companies named.

We have examined the record with care, and find no errors therein justifying a reversal of the judgment, which must consequently be affirmed, with costs. All concur.